**UNITED STATES of America**

v.

**Frank BORRELLI.**

**CR. No. N–90–31 (WWE).**

United States District Court,
D. Connecticut.

April 30, 1991.

S. Twardy, U.S. Atty., Peter Markle, New Haven, Conn., and Deborah Slater, Hartford, Conn., for plaintiff.

William Barnes, Fairfield, Conn., for defendant.

## RULING ON DEFENDANT BORRELLI'S MOTION TO SUPPRESS GOVERNMENT'S ELECTRONIC SURVEILLANCE

EGINTON, District Judge.

### BACKGROUND

This case originally involved fourteen defendants charged in a superseding indictment filed on June 21, 1990, with having operated the Schettino trafficking ring in Connecticut, which distributed cocaine during 1989 and 1990.

On April 12, 1991, this Court conducted a hearing on pending motions filed by the remaining three defendants, Frank Borrelli, Frank Grassi and Mary Torres. One such motion was Borrelli's Motion to Suppress Electronic Surveillance.

Defendant Borrelli had filed his Motion to Suppress on August 6, 1990, but by order of this Court, he filed a particularized memorandum in support of the motion on April 19, 1991. The Government responded on April 25, 1991 and this motion is now ripe for decision.

### ARGUMENTS

Defendant Borrelli moves to suppress the contents of all wire and oral communications intercepted by the Government during 1989–1990 on the grounds that the interceptions were unlawfully obtained. The defendant maintains that the orders of authorization were facially insufficient, that government agents failed to take appropriate steps to minimize interception of the communications, and that the affidavits supporting the wiretap application failed to establish probable cause for the issuance of electronic surveillance orders.

Specifically, Defendant Borrelli argues that the Government's wiretap application did not establish the futility or failure of other investigative techniques. The defendant maintains that conventional techniques would have been adequate in this case, particularly since the defendant was incarcerated during the entire period. The defendant further argues that the wiretap application and order were overbroad. The defendant maintains that the application failed to give a particular description of the communications to be intercepted, and the identity, if known, of the person committing the offense. He contends that the order authorized a general search because it permitted interception of any communication by any person without warning.

The Government argues that the wiretap application was supported by an affidavit that adequately demonstrates that the Government attempted to use other investigative means, but such measures had failed. The Government further maintains that the wiretap application and subsequent order were not so overbroad as to constitute a general search in violation of the fourth amendment. The Government also contends that the affidavit submitted in support of the wiretap application, when viewed in its entirety, sufficiently establishes probable cause.

Although it relies on the above arguments set forth in its September 25, 1990 response, the Government has also filed a supplemental memorandum on April 25, 1991. Here, the Government argues that Borrelli's claims are misplaced because Borrelli was not the target of the investigation, the state prison telephone was not the target telephone, and at the time the affidavit was submitted, Borrelli was not even known to the affiants.

### DISCUSSION

The Court has considered the arguments proffered by the parties and, for the rea-

sons set forth below, Borrelli's motion to suppress will be denied.

On February 1, 1990, the Government sought authorization to intercept wire communications of certain named individuals, and "others as yet unknown." The application was supported by the affidavit of a special agent involved in the investigation. ("February Affidavit"). Pursuant to the application and affidavit, Chief Judge Ellen Bree Burns authorized the interception of wire communications. On March 12, 1990, the Government submitted another application and affidavit and received an extension of the original order. ("March Affidavit").

## A. OVERBREADTH

Title 18 U.S.C. § 2518(1) (1988) sets forth the information to be included in a wiretap application. Section 2518(1)(b)(iii) provides for "a particular description of the type of communications sought to be intercepted," and section 2518(1)(b)(iv) requires "the identity of the person, if known, committing the offense and whose communications are to be intercepted." Section 2518(4)(a) prescribes that an order authorizing an interception must specify "the identity of the person, if known, whose communications are to be intercepted."

■ The language of both sections contemplates that calls of persons whose identities are unknown at the time of the application and order may be intercepted. The Second Circuit has upheld the statute against claims that it was unconstitutional on its face. A wiretap order that fails to "specify every person whose conversations may be intercepted does not per se amount to a 'virtual general warrant' in violation of the fourth amendment." *United States v. Figueroa*, 757 F.2d 466, 472 (2d Cir.1985). Rather, a court must analyze the facts of each case in determining whether the wiretap order conforms to the requirements of the fourth amendment, because the Supreme Court has held that electronic surveillance that is not based on probable cause or obtained without particularizing the scope and duration of the interceptions violates the fourth amendment. *Id.* at 471 (citing *Berger v. New York*, 388 U.S. 41, 87,

87 S.Ct. 1873, 1897–98, 18 L.Ed.2d 1040 (1967)).

In this case, the applications and subsequent orders were not overbroad in nature and were fully supported by the accompanying affidavits. As will be discussed below, the affidavits sufficiently established probable cause, and the affidavits confirm that the Government acted in good faith to particularize the scope and duration of the interceptions. For example, from February 1, 1990 through March 3, 1990, 256 calls were intercepted, out of a total of 1,959 calls, because those 256 calls were deemed pertinent to the ongoing investigation. March Affidavit at ¶ 9(a), p. 8. These interceptions led to the identification of additional named targets, and resulted in the deletion of at least one named target. March Affidavit at ¶ 3(a), p. 4. Thus, the Government used the information it had obtained from the interceptions to tailor its investigation.

## B. ATTEMPT AND FAILURE OF LESS INTRUSIVE INVESTIGATIVE TECHNIQUES

Title 18 U.S.C. § 2518(1)(c) (1988) provides that a wiretap application must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous...."

■ The requirement of statements delineating "other investigative procedures" is merely designed to ensure that wiretapping will not be used in situations where conventional investigative methods would be sufficient to expose the crime. However, traditional surveillance techniques do not have to be exhausted first if such techniques would be impractical, costly and inconvenient. *United States v. Lilla*, 699 F.2d 99, 102 (2d Cir.1983). Here, the supporting affidavits describe the attempts, and failures, of the Government's use of normal investigative procedures. For example, pen register devices were used, extensive physical surveillance of Schettino and his associates was undertaken and controlled purchases of cocaine

were made. Although these techniques were useful, such methods did not uncover the full scope of the illegal activities or reveal the subject matter of such calls and meetings. The defendant maintains that the Government's allegations of damage to the informant were unfounded because the Government continued to use him after the wiretap was instituted. However, the continued use of the informant was not at issue, rather it was the potential that "*overexposure* of the cooperating witness ... would create the risk that his role would be revealed and he would place his safety in great jeopardy." March Affidavit, ¶ 3(c), p. 6 (emphasis provided). In addition, the affiant noted that frequent undetected physical surveillance of Schettino and his associates was virtually impossible because of the group's extreme sensitivity to surveillance attempts and because of the group's ability to mount counter-surveillance techniques. Some normal methods of investigation were rejected as too dangerous, such as the immunization of confidential informants and the continued extensive use of the cooperating witness. Other techniques were discarded as unlikely to succeed, such as interviewing identified street-level drug users involved with Schettino. *See, generally*, February Affidavit.

■ Defendant Borrelli argues that the Government could have obtained complete knowledge of his relations with Schettino without a wiretap, because Borrelli was confined in Somers prison during the entire surveillance period. However, ordinary prisoner supervision is not designed to uncover the full scope of a conspiracy. The defendant correctly argues that the Government could have obtained the identity of Borrelli's visitors in advance, and such visitors could have been followed to the prison. The defendant also asserts that prisoner phone calls are never private because calls are always made in the presence of other inmates who are "notoriously ready to inform on one another." However, the mere ability to follow Borrelli's visitors to the prison, or solely relying on information garnered from eavesdropping prison informants does not reliably guarantee that the Government could have obtained complete knowledge of Defendant Borrelli's relations with Schettino without using a wiretap.

## C. PROBABLE CAUSE

■ The standard of probable cause for a wiretap is the same as the standard used for regular search warrants. *United States v. Fury*, 554 F.2d 522, 530 (2d Cir. 1977), *cert denied*, 436 U.S. 931, 98 S.Ct. 2831, 56 L.Ed.2d 776 (1978). Thus, a totality of the circumstances test is applied when assessing probable cause in the context of wiretap applications. *United States v. Tufaro*, 593 F.Supp. 476, 479 (S.D.N.Y.1983), *aff'd* 762 F.2d 991 (2d Cir. 1985).

■ Upon reviewing the supporting February Affidavit, this Court agrees with Judge Burns' finding that there was probable cause to believe that Anthony Schettino, and others, were engaged in cocaine trafficking, and that wiretap surveillance would produce evidence of such activity.

The affidavit recounts corroborated information concerning drug trafficking that the Government received from several informants, and it describes a controlled purchase of cocaine that was made from Schettino and an associate. Further, the affidavit contains references to pen register data that supports a finding that a connection existed between Schettino's cocaine trafficking and his home telephone. There was extensive evidence of calls placed from the target telephone to individuals who had been convicted of drug-related offenses, or to individuals who were suspected to be engaged in narcotics-related activity. There was also evidence of calls placed to the target telephone by persons who either had prior drug convictions, or who were suspected to be involved in drug-related activity. Finally, the affidavit describes Schettino's prior narcotics convictions, and the fact that one of these convictions was based upon the use of a telephone to distribute cocaine.

After reviewing the supporting documentation, this Court is persuaded that Judge

Burns' finding of probable cause was correct.

## CONCLUSION

Based upon the above, Defendant Borrelli's Motion to Suppress Electronic Surveillance is DENIED.